**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YOLANDA SOTO, individually and as proposed Administratrix of the ESTATE OF XAVIER CUEVAS-SOTO, and ADRIANNA SOTO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PATERSON, et al.,<br><br>Defendants. | Civil Action No: 18-11311-SDW-SCM<br><br>**OPINION**<br><br>September 26, 2019 |

**WIGENTON**, District Judge.

Before this Court is Defendants City of Paterson (the "City" or "Paterson"), Jerry Speziale ("Speziale"), and Troy Oswald's ("Oswald") (collectively, "Defendants")[1] Motion to Dismiss Plaintiffs Yolanda Soto ("Ms. Soto") and Adrianna Soto's ("Adrianna") (collectively, "Plaintiffs")[2] Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a). Venue is proper pursuant to 28

---

[1] Sergeant Christopher D. Benevento, Officer Anthony DeGiglio, John Doe Supervisors 1-5, John Doe Training Officers 1-3, John Doe Internal Affairs Officers 1-5, James Doe 1-5, and ABC Entities 1-5 are also named defendants, but none have joined the instant motion to dismiss.

[2] Ms. Soto brings suit individually and as the Administratrix of the Estate of Xavier Cuevas-Soto. A previous dispute as to whether Ms. Soto had been properly and/or timely appointed Administratrix has been resolved, (*see* D.E. 22), and the caption will be changed to reflect her appointment. Adrianna brings suit solely on her own behalf. The Estate of Xavier Cuevas-Soto is not a named party.

1

U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Ms. Soto, her son Xavier Cuevas-Soto ("Xavier"), and her daughter Adrianna attended a party at Sergeant Christopher D. Benevento's ("Benevento") home in Totowa, New Jersey on July 4, 2016. (D.E. 45 ¶¶ 1-3, 9, 25, 60-62.) At all relevant times, Benevento was an officer with the Paterson Police Department ("PPD"), Speziale was the Director of the PPD, and Oswald was its Chief of Police. (*Id.* ¶¶ 4-5, 7-9.) Benevento was off-duty on the day in question, and while hosting, left his police-issued handgun unsecured with the safety in the "off" position. (*Id.* ¶¶ 26, 61-68.) Xavier picked the gun up and was killed when it discharged. (*Id.* ¶¶ 26, 70-72.) Ms. Soto and Adrianna witnessed Xavier's death. (*Id.* ¶¶ 71-76.)

On or about September 26, 2016, Ms. Soto filed a Notice of Claim upon the City of Paterson for the wrongful death of her son, which she alleged was due to Benevento's "failure to properly secure a loaded weapon at a party." (D.E. 46-2.)[3] On July 2, 2018, Plaintiffs filed a ten-count Complaint in this Court against Paterson, Speziale, Oswald and others, alleging that the defendants' actions leading up to, during, and after the fatal shooting violated constitutional, statutory, and common law. Defendants moved to dismiss on August 17, 2018 and this Court granted their motion on December 10, 2018. (D.E. 13, 19, 21, 28, 29.) Plaintiffs sought, and this Court denied, reconsideration of that dismissal. (D.E. 33, 42, 43.) Plaintiff filed an Amended Complaint on May 1, 2019, alleging that the moving Defendants: 1) "failed to properly train, supervise, and/or discipline" Benevento "on requirements for use, operation and handling of

---

[3] The City received the Notice of Claim on September 29, 2016. (D.E. 1 ¶¶ 20-24; D.E. 13-5.)

2

firearms both on and off duty, firearms safety and crime scene investigations;" 2) failed to properly investigate Xavier's death; and 3) conspired to make Xavier's death look like a suicide. (D.E. 45 ¶¶ 31-32, 37, 83-89.) Defendants filed the instant motion to dismiss on May 21, 2019 and all briefing was timely filed. (D.E. 46, 58, 62.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the

complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Because this is the second time this Court is asked to review Plaintiffs' claims for sufficiency, and because Plaintiffs acknowledge that the Amended Complaint "sets forth the same facts and causes of action [as the initial Complaint] with the exception of adding a First Amendment claim for lack of access to the [c]ourts and re-pleading the facts to establish that the subject conspiracy began prior to plaintiff's [sic] decedent's death," (D.E. 58 at 1, 3), this Court will focus its analysis on those changes and discuss only those facts necessary to conduct its analysis.

A. <u>Counts I - III – Section 1983 Claims</u>[4]

42 U.S.C. §1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not itself, create any rights, it merely provides "private citizens with a means to redress violations of federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997); *O'Toole v. Klingen*, No. Civ. 14-6333, 2017 WL 132840, at *5 (D.N.J. Jan. 13, 2017); *Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 350 (D.N.J. 2014).

---

[4] Plaintiffs' § 1983 claims are: *Monell* Supervisory Liability (Count I); Individual Liability (Count II); and State Created Danger (Count III).

4

To bring a § 1983 claim, "a [] plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *Hilton v. Whitman*, No. Civ. 04-6420, 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (noting that the plaintiff must "identify the exact contours of the underlying right said to have been violated"). For a municipality to be held liable under the theory of respondeat superior, the constitutional harm alleged must be caused by a municipal policy or custom. *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978); *see also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 318 (D.N.J. 2015).

As this Court has noted previously, only Ms. Soto's § 1983 claims on her son's behalf as administratrix of his estate remain,[5] and those claims are limited to violations that occurred before Xavier's death. *See e.g., McCain v. Episcopal Hosp.*, 350 F. App'x 602, 604 (3d Cir. 2009) (stating that § 1983 "does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death") (internal citation omitted); *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980) (holding that "the civil rights of a person cannot be violated once that person has died"); *Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir. 1979) (noting that a deceased is not a "person" for purposes of § 1983); *Kellom v. Quinn*,

---

[5] Plaintiffs previously filed individual claims for violations of their own constitutional rights, but voluntarily withdrew them in their opposition brief to Defendants' prior motion to dismiss. (D.E. 19-1 ¶ 7; D.E. 28 at 5; *see also Robles-Vasquez v. Garcia*, 110 F.3d 204, 206 n. 4 (1st Cir. 1997) (noting that "surviving family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution for their own damages from the victim's death unless the unconstitutional action was aimed at the familial relationship"); *McGhee v. Sanders*, Civ. No. 12-7955, 2013 WL 785084, at *2 (D.N.J. Feb. 28, 2013).) Although errors in the Amended Complaint still appear to raise individual claims, Plaintiffs' counsel confirms that the only § 1983 claims being raised are those brought by Ms. Soto as Administratrix of her son's estate. (D.E. 58 at 5-6.)

Civ. No. 17-11084, 2018 WL 4111906, at *9 (E.D. Mich. Aug. 29, 2018) (dismissing § 1983 claim on behalf of decedent based on allegations that defendants conspired to cover-up the nature of a fatal shooting); *Concert v. Mount Greenwood Cemetery*, Civ. No. 11-1201, 2011 WL 5008348, at *5-6 (M.D. Pa. July 19, 2011); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 367 n.15 (D.N.J. 1983) (noting that "[a] person's civil rights cannot be violated once that person has died; thus a cover-up of the circumstances surrounding a person's death cannot violate that person's rights").

In an attempt to plead facts that show a violation of Xavier's civil rights before his death, the Amended Complaint adds general allegations that Defendants conspired to conceal their wrongful actions "at the scene of the accident and before the ambulance arrived" and "prior to the time Xavier was transported to the hospital and prior to the time Xavier died," in order to deprive him of access to the courts in violation of his First Amendment rights. (D.E. 45 ¶¶ 27 – 28; 32; 94 (alleging that the conspiracy "commenced while Xavier was alive, and was intended to "avoid, limit or restrict plaintiff's ability to access the courts, to hold [Defendants] accountable and to hamper litigation efforts"); ¶ 103.) Aside from these bald, unsupported assertions, which appear to have been included to alter the timeline of events in order to preserve Ms. Soto's § 1983 claims, Plaintiffs offer no factual support for their new allegations. Therefore, Ms. Soto's First Amendment claim will be denied.

The remaining § 1983 claim is that Defendants failed to properly train and/or supervise Benevento on the proper use and handling of firearms. Plaintiff must first show that Benevento acted under color of law. The conduct that allegedly gave rise to Xavier's death was Benevento's decision to leave his handgun unsecured while he was hosting a party at his home. The facts, as set forth in the Complaint, show that Benevento was not on-duty, he was hosting a holiday party at his residence for friends/acquaintances, and that his home was located outside of the jurisdiction

6

of the PPD. There is no allegation that Benevento identified himself as a police officer during the party, performed any duties required of an active duty officer, exercised any official authority, or required party-goers to comply with instructions that could be understood to further law enforcement objectives. Rather, the facts support only a finding that Benevento, at all relevant times, was acting as a private citizen. The fact that Benevento's state-issued weapon was involved is unfortunate, but it does not alone create state action sufficient to support a § 1983 claim. *See, e.g.*, *Barna*, *v. City of Perth Amboy*, 42 F.3d 809, 817-18 (3d Cir. 1994) (holding that officers were not acting under color of state law even though police-issued weapons were involved); *Strauss v. Walsh*, Civ. No. 01-3625, 2002 WL 32341791, at *4 (E.D. Pa. Dec. 17, 2002) (finding off-duty officer was not acting under state law where firearm accidentally discharged). Because "[a] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law," *Barna*, 42 F.3d at 816-17 (internal citations omitted), Plaintiffs have failed to plead facts sufficient to sustain Ms. Soto's § 1983 claim against Benevento.

Ms. Soto argues that even if Benevento is not liable under § 1983, the City and its directing and supervising officers remain liable because Ms. Soto has brought "separate, independent constitutional claims" against those defendants which are "based on different theories and require proof of different actions and mental states." *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) (noting that in the case of a substantive due process claim an officer can be "merely the causal conduit for the constitutional violation committed by" a city). In order to bring a claim under the "causal conduit" theory of liability, a plaintiff must show that the municipality acted with "deliberate indifference" in implementing a "policy of inadequate training" that led to the victim's harm. *Id.* Here, Ms. Soto identifies the extensive training and policies provided to officers regarding gun-safety, (D.E. 45 ¶¶ 40-46, 55-59), and then argues that the City, Oswald and

Speziale failed "to properly supervise, monitor, discipline and provide adequate training to Benevento" on those policies and procedures, including the handling of guns while off-duty. (D.E. 45 ¶ 37(i).) Ms. Soto does not, however, specify how the City and the supervisory defendants failed to train Benevento nor does she cite to other evidence that would show a pattern of violations by officers that might indicate the breakdown or insufficiency of those standards.[6] The mere fact that one officer allegedly violated a municipality's gun-safety regulations, alone, does not give rise to municipal liability. Therefore, Counts One, Two, and Three must be dismissed.

### B. Counts IV-X - New Jersey State Law Claims

Counts Four through Ten of Plaintiffs' Complaint assert state law claims, including violation of the New Jersey Civil Rights Act ("NJCRA") (Count IV); Negligence (Count V); Intentional Infliction of Emotional Distress (Count VI); Negligent Infliction of Emotional Distress (Count VII); Civil Conspiracy (Count VIII); Wrongful Death (Count IX); and Abuse of Power and Authority (Count X). Once again, this Court recognizes that although 28 U.S.C. § 1367 permits federal courts to exercise jurisdiction over state law claims, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Stehney v. Perry*, 907 F. Supp. 806, 825 (D.N.J. 1995) ("[A] federal district court may decline to exercise its supplemental jurisdiction over state law claims if all federal claims are dismissed.");

---

[6] The Amended Complaint points to nine instances "evidencing misconduct" within the Paterson police department. (D.E. 45 ¶ 52.) Of those examples, only one involves the use of a weapon by an off-duty police officer. (*Id.* at ¶ 52(a) (alleging that in 2016, an officer "fired his gun outside a 7-11 store while off-duty, resulting in injuries to two civilians from fragments or debris, but failed to report the shooting for 24 hours, and was not arrested until a week later").) This is insufficient to show a lack of appropriate policies or procedures or a larger failure by the City or the supervising officers to implement those policies properly. Nor is Plaintiffs' counsel's allegation that she has personal knowledge of "reams of complaints against the Paterson [Police Department] by members of the public complaining of a multitude of misconduct" enough to support Ms. Soto's claim. Blanket allegations of generalized misconduct without some factual support fail to state a constitutional claim upon which relief can be granted.

*Washington v. Specialty Risk Servs.*, Civ. No. 12-1393, 2012 WL 3528051, at *2 (D.N.J. Aug. 15, 2012) (noting that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims") (alterations in original) (citing *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)) (internal citations omitted). This Court again declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and will dismiss Counts Four through Ten.[7]

IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss the Amended Complaint is **GRANTED**. An appropriate order follows.

                                                         /s/ Susan D. Wigenton
                                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Steven C. Mannion, U.S.M.J.
              Parties

---

[7] Were this Court to reach the substance of Count Four it likely would be dismissed. Count Four raises a claim pursuant to the New Jersey Civil Rights Act, and states that "[t]he factual allegations in the [Amended] Complaint supporting liability under 42 U.S.C. § 1983 as set forth herein also support a cause of action under the" NJCRA. (D.E. 45 ¶ 165.) Because the NJCRA is "interpreted analogously to Section 1983," this Court's § 1983 analysis controls Plaintiff's NJCRA claim as well. *O'Toole*, 2017 WL 132840 at *5; *see also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after [] § 1983").